30 C.C.P.A.(Patents)

**In re SWENSON et al.**

**No. 4766.**

Court of Customs and Patent Appeals.

Dec. 1, 1942.

Rehearing Denied Jan. 29, 1943.

Harold J. Kinney, of St. Paul, Minn. (Charles S. Grindle, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, P. J., and BLAND, HATFIELD, LENROOT, and JACKSON, JJ.

### JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner, rejecting for want of patentability in view of the prior art, claims 1 to 29 inclusive of an application for patent, Serial No. 383,168. One claim rejected by the examiner was allowed by the board. The application is stated in the specification to be a continuation of appellants' copending application Serial No. 752,886, filed November 13, 1934, and renewed August 27, 1938. The latter application is involved in Patent Appeal No. 4595 concurrently decided herewith.

Claim 1 illustrates the nature of the subject matter of the application herein. It reads as follows: 1. In the manufacture of artificially colored granulated material of the order of blue-green, normal green, yellow-green, the steps of forming a mixture of fluxing agents, silica, a chromate and a carbonaceous reducing agent therefor selected from the group consisting of coal, carbon, starch, wood flour, sugar and glycerine, coating the individual surfaces of the granules with the mixture and then applying heat for producing a reaction product of the chromate and reducing agent in situ on the individual surfaces of the granules to produce a colored glazed coating which is weather-resisting and substantially free from water-soluble chromates and dichromates.

The invention herein relates to a process for treating mineral granules, such as quartz, quartzite and the like, by coating the granules with a glaze coating composition containing coloring matter, and to the resultant product. In the process the colored glaze coating is obtained by treating the granules with chromates or dichromates in the presence of a reducing agent to produce a chrome oxide green pigment substantially free of water soluble materials. Sodium dichromate is employed with a reducing agent, such as coal, coke, charcoal, sugar, wood flour, etc., which converts the dichromate to chrome oxide in situ on the granules. It is the chrome oxide which imparts the green color to the coating. The invention is particularly concerned with the production of colored granules for roofing.

The following references were cited: Johnson, (British) 304,809, January 24, 1929; Fisher, 1,766,814, June 24, 1930; Brown, 1,831,784, November 10, 1931; Caspari, 1,893,761, January 10, 1933; Baggs et al., 1,959,149, May 15, 1934.

The Fisher patent relates to processes for coloring granular material for use particularly as a surfacing for prepared roofing. The material, said in the specification to be slate, is subjected to processes for producing glazed green, red glazed, glazed black and brownish black granules. For the production of the glazed green granules a mixture of silicate, chromic oxide, borax and water is used for coloring. This mixture is applied to the granules, which are then heated in a kiln up to 1500 or 1600 degrees Fahrenheit, resulting in the production of green glazed granules. The chromic oxide gives a green coating to the granules.

The Brown patent relates to rock granule surface material and its manufacture, particularly to roofing surfaces thereof such as sheets and shingles of a fabric with the mineral particles placed in an adhesive coating on the weather side. The patentee employs granules such as quartz, mica, etc., susceptible of coloring or glazing. According to the specification, a glaze of any desired color may be imparted to the granules. For producing green coated granules the patentee employs among other substances sodium dichromate in an aqueous solution of a fluxing salt. The coated granules are fired in a kiln to cause fusion of the glaze thereon. The firing is said to produce "solid solutions of metallic silicates of the characteristic color due to the presence of the particular metal or metals employed in the glaze."

The Johnson patent discloses the production of brilliant green hydrated chromic oxide and also discloses the use of reducing agents such as carbon in the form of lamp black or powdered wood charcoal.

The Caspari patent concerns a process for the manufacture of chromium hydroxide and chromium oxide from alkali salts of chromic acid. It discloses the use of reducing agents such as molasses, saw dust, or brown coal dust. The chromium hydroxide, according to the specification, has a "beautiful green appearance and can be employed as a pigment."

In view of our conclusion, it is not necessary to discuss the Baggs et al. patent.

The Caspari and Johnson patents were relied upon for the purpose of showing that it was old to use carbonaceous reducing agents in the reduction of dichromates and chromates to form green chromic oxides which may be used as coloring agents.

This appeal is closely related to appeal No. 4595, 132 F.2d 336, and the filing of the continuing application herein is said by appellants in their brief to provide them with an opportunity to rewrite several claims of the parent application which were rejected below in appeal No. 4595 on the ground that they contained improper Markush groupings. It is noted in comparing the method claims herein with claims of like character in appeal No. 4595 that the present claims omit a recitation of sulfur as one of the Markush type groups.

The Primary Examiner cited the art relied upon by him in appeal No. 4595 as one of his grounds of rejection herein, and in addition cited the Caspari patent and the Johnson patent. The Primary Examiner rejected all of the claims of the application, 1 to 30, as being unpatentable over the references and for the reasons fully set forth in his statement in appeal No. 4595, and further rejected all of the claims as involving no invention over the Fisher patent, 1,766,814, or the Fisher patent, 1,782,-648, or the patent to Brown, in view of Johnson or Caspari. The Fisher patent, 1,782,648, was not cited or considered by the board and it is not necessary to consider it here.

The examiner in addition to rejecting all of the claims in view of the prior art further rejected claims 1 to 10 because in his opinion they involved the improper use of the Markush type claim in the grouping of reducing agents. The board refused to affirm this rejection.

The board also held that the cited references did not appear to meet the process of claim 30 and the decision of the examiner with respect to that claim was reversed and the claim allowed. The decision of the examiner rejecting claims 1 to 29 inclusive in view of the prior art was affirmed by the board.

In appeal No. 4595 the decisions of the tribunals of the Patent Office on claims somewhat similar to the ones before us now denied patentability on the Brown reference in view of the Baggs et al. reference. In the instant decision the board states that the claims of this appeal have been rejected on the same references and for the same reasons as in the prior patent appeal.

The claims here have been further rejected on the Brown or Fisher reference in view of the patents to Caspari or Johnson.

It is clear that both the Caspari and Johnson patents show the use of carbonaceous reducing agents in the process of making chromic oxide pigments from chromates and dichromates. Neither of these patents relates to the coloring of granulated material such as is involved here. But since the patent to Brown and the Fisher patent both are concerned with the process of coloring mineral granules such as those here involved, therefore the coloring of mineral granules is old in the roofing art, as is the production of pigments in the pigment art as shown by the Caspari and Johnson references. An examination of the Brown patent and the Fisher patent in view of what is accomplished in the process of the patents to Caspari or Johnson convinces us that it would not require the exercise of the inventive faculty to use the carbonaceous reducing agents of either of the two latter patents in the forming of green chromic oxide pigments on the granules of the present application.

We can see no patentable distinction between the forming of a colored glazed coating which is weather resisting and substantially free from water soluble chromates and dichromates on granules such as are employed in the Fisher and Brown references as well as in the present invention, and the same kind of coating on pottery or other shaped heat resisting articles or materials.

■■ Appellants contend that claims 22 and 24 are patentable for the reason that they set out specific ratios of boric acid to the basic metal oxide. It was held by the tribunals below that there is nothing in the specification to show that the claimed ratios are critical. While it appears in the application that the ranges claimed constitute "a very novel feature of our invention" such statement does not amount to a showing that the ranges existing in the specific ratios of those claims are critical. The mere statement by the appellants that such statement is a measure of critical limitations in the absence of any further statement in the specification or actual showing of reasons why they should be considered as such cannot be accepted as proof that such ratios are in fact critical. In re Grei-

der et al., 129 F.2d 568, 29 C.C.P.A., Patents, 1079. We have examined the affidavits in the record and find nothing therein to supply proof of appellants' contention in this regard.

For the reason that in our opinion the claims have been properly rejected as being unpatentable over the Brown or Fisher references in view of either the Johnson or the Caspari references, it is not necessary to discuss any further reasons of appeal, and the decision of the Board of Appeals is affirmed.

Affirmed.