32 C.C.P.A. (Patents)

### In re STOVER.

Patent Appeal No. 4921.

Court of Customs and Patent Appeals.

Dec. 11, 1944.

Harry C. Alberts, of Chicago, Ill., for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the examiner finally rejecting all of the claims in an application for a patent which relates to an elongated paper container particularly adapted for receiving and packaging ice cream, or other plastic foodstuffs, for subsequent sale to the public in sanitary and predetermined units.

As it leaves the freezer in its plastic condition, it appears that ice cream contains a large volume or overrun of air which has been injected during the process of manufacture for the purpose of improving the texture, smoothness, and to some extent the taste of the product.

As described in the specification, this semiliquid material is poured into the container and subsequently frozen in the hardening room while in the container. Markings or creases are calibrated along the exterior of the container to designate predetermined units of ice cream, and a longitudinal seam flap is provided to facilitate the separation of the container for the removal of the contents.

The bottom of the container is provided with small air vents so that the air may escape from the container as the plastic material is poured into it.

Claim 9, which is illustrative of the appealed claims, reads as follows: "9. A package for normally liquid material frozen to a substantially solid state comprising an elongated paper container of such thinness that is not self-sustaining nor form-retaining, said container being folded to define an end enclosure to normally assume a flat collapsed position along predetermined crease lines, said elongated container being of such restricted cross-section to normally preclude the filling thereof by the gravity flow of the aforesaid material therein, there being air vent openings in said container to permit the escape of air therethrough when the container is being filled with contents poured therein in its plastic state through the urge of gravity, predetermined markings on the exterior of said container, said markings being calibrated along the length thereof to designate predetermined units therealong, and an extended longitudinal seam flap on said container to facilitate the separation of the container for the removal thereof from the contents."

The appellant does not rely upon the elements per se as novel, but contends, first, that patentable invention is involved in a new combination of old elements that is responsible for an improved self-contained package for special purposes; and, secondly, that the examiners of the Patent Office tribunals, arbitrarily and erroneously dissected the new combination into separate and distinct elements to establish that they were old per se in a number of prior art patents that were collectively relied upon as the basis for the rejection.

The examiner cited the following patents: Tiffany 397,475 February 5, 1889; Ortner 1,760,959 June 3, 1930; Clearwater 2,062,249 November 24, 1936; Massey 2,162,853 June 20, 1939.

He rejected the claims of appellant on the basis of the disclosures of the Clearwater patent in view of the other named references.

The Clearwater patent relates to a method by which plastic ice cream may be packed in a container of any convenient length, say 36 inches, formed of material such as cellophane.

The specification therein provides for a filler tube which may be used in any desired way to fill the container, but as a general rule the tube is connected to the outlet of a standard constant discharge freezer by means of a pipe. By this simple arrangement, ice cream of the semisolid consistency delivered by the freezer will be forced through the pipe and filler tube in a slow continuous stream.

The Clearwater container, closed at one end by twisting the paper, is slid onto the filler tube, and a valve near the top of the tube then releases the plastic ice cream into the container, which is slowly withdrawn as it is filled. When filled it is placed in the hardening room for freezing.

When the ice cream is removed from the hardening room, according to the Clearwater specification, it may be sold in the long tubular form it then possesses, leaving it to the dealer to cut it into sections of the desired size; or it may be cut at the plant into such sections equal to individual portions, which may be packed in boxes, say of a dozen each, side by side.

It may be noted also that the Clearwater patent shows the same means for forming a tab to be used in removing the cover from the ice cream units as used by the appellant.

The Tiffany patent shows a package for holding food materials, the outside of the wrapper having alternate light and heavy paralleled lines numbered and printed thereon, so that a given weight of material may be measured by cutting through the wrapper and its contents, following the lines indicative of the amount as a guide.

The Ortner patent discloses a method of filling a measuring element or carton with ice cream, and describes the manner in which the air is allowed to escape during the filling process through an opening in the head of the carton.

The Massey patent shows and describes cartons for receiving ice cream or other plastic material. In this patent the container is provided with a vent at the bottom for the escape of air, and also for the escape of a small amount of the ice cream after the air has been completely displaced to indicate that the carton has been completely filled.

The above references cited in connection with the application herein were supplied by the respective examiners in discharge of their official duties as required by the authorized rules of practice of the Patent Office.

Rule 66, Rules of Practice, United States Patent Office, 35 U.S.C.A.Appendix, so far as pertinent, provides "66. Upon taking up an application for action on the merits the examiner shall make a thorough investigation of the prior art with respect to the invention sought to be protected in the application. Upon the rejection of an application for want of novelty, the examiner must cite the best reference at his command. When the reference shows or describes inventions other than that claimed by the applicant, the particular part relied on must be designated as nearly as practicable. The pertinence of the reference, if not obvious, must be clearly explained and the anticipated claim specified."

It will be readily observed from a review of the pertinent teachings of the references cited herein by the examiners, that appellant's second ground of appeal, as stated above, is without merit. This court, in Re Fridolph, 134 F.2d 414, 416, 30 C.C.P.A.,Patents, 939, said: "Appellant emphasizes that 'there is no reference which shows the invention.' This may readily be agreed to, but it is entirely proper to consider several references in connection with the allowance of patent claims. It is also inferred from appellant's argument that some of the references should not be considered since they do not relate to bandages. In considering more than one reference, or a reference alleged not to be in the art involved, the question always is: does such art suggest doing the thing which the applicant has done? We think the art of record clearly suggests doing what appellant has done."

The question as to whether or not an improvement over the prior art is such as to denote inventive quality was before the court in Seiberling Rubber Co. et al. v. I. T. S. Co., 6 Cir., 134 F.2d 871.

In that case the court correctly pointed out that while a valid patent may issue for a new combination even though all its elements be old, nevertheless this is true only where the quality of invention is exercised in the combining to bring about a new mode of operation and produce a new and useful result. In this connection, the court called attention to the well-established doctrine that a new or more extended application of the original thought or conception, a change only in form, proportions, or degree, which merely results in the substitution of equivalents doing the same thing by substantially the same means with better results, is not such "invention" as will sustain a patent over the prior art.

None of the references cited by the examiners in the case at bar discloses the exact and complete combination covered by appellant's claims. Nevertheless, the prior art definitely shows that all the elements of appellant's combination are old, and that it required but little ingenuity and no invention to combine them in forming the article to which appellant's claims are drawn.

The Board of Appeals of the Patent Office has rightly decided that it would not amount to invention to provide the container of Clearwater with the markings as taught by Tiffany, and with the vents or openings for the escape air as taught by Ortner or Massey, and that no patentable conception is involved in filling a container through the urge of gravity, as that procedure is but a common expedient for filling containers with a liquid or semiliquid substance.

The rejected claims herein cover an article, the construction of which, in view of the prior art, would be within the obvious

302

and expected routine skill of those laboring in the art, and are, therefore, unpatentable.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.