33 C.C.P.A.(Patents)

## In re BURHANS.

### Patent Appeal No. 5128.

Court of Customs and Patent Appeals.

April 1, 1946.

John F. Eakins, of Chicago, Ill., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting in appellant's application for a patent claims 2 and 4 for a method of making flour, claims 5 and 6 for a method of making bread, and claims 8 and 10 for an article of manufacture of genuine whole wheat flour. The foregoing claims were all rejected as lacking invention over the prior art and claims 5 and 6 were further rejected as aggregative. There were no claims allowed.

Claims 4, 6, and 10 are illustrative and sufficiently descriptive of the alleged invention. They read:

"4. The method of making genuine whole wheat flour which consists in separating the germs from the wheat, manufacturing flour from the remaining constituents of the wheat, aging the flour, incorporating thereinto finely divided non-rancid wheat germ constituents, and thereafter impregnating the flour with carbon dioxide.

"6. The method of making genuine whole wheat bread which consists in separating germ constituents from wheat, reducing the remaining constituents of the wheat to flour, aging the flour, incorporating in the aged flour finely divided non-rancid wheat germ constituents, thereafter impregnating the flour with carbon dioxide, making the flour into dough and baking the dough while the flour still retains a substantial amount of carbon dioxide.

"10. As an article of manufacture, genuine whole wheat flour comprising finely divided non-rancid wheat germ, constituents and the remaining constituents of the wheat in finely divided and aged condition, the whole mass of the flour being impregnated with carbon dioxide."

The references are:

| | | |
|---|---|---|
| Currie (Br.) | 5,614 | of 1828 |
| Byrne | 29,859 | Sept. 4, 1860 |
| Dietz | 1,974,808 | Sept. 25, 1934 |
| Donk et al. | 2,085,421 | June 29, 1937 |
| Wellinghoff | 2,230,417 | Feb. 4, 1941. |

In support of his position here, appellant states in his brief:

"* * * It is pertinent to note that the reason that white bread is so widely used notwithstanding its well-known deficiencies, is that flour must be aged before it acquires good baking qualities. The aging of flour is an oxidation process which can be effected by allowing the air to work on the flour for an adequate period of time. It was found that flour could be aged much more rapidly by incorporating therein an oxidizing agent and flour thus aged is usually referred to as 'patent' flour. The wheat germ contains a large proportion of oil and this oil has a great tendency to become rancid. To avoid this rancidity the milling art has from time immemorial separated the germ from the wheat and the resulting flour could then be aged. The development of rancidity is also an oxidation process and if the germ were ground up with the wheat kernel the aging process would inevitably result in full development of rancidity.

"The present applicant has discovered that carbon dioxide has the quality of preventing overaging of flour and of preventing the development of rancidity. Consequently his method of making a true whole wheat flour or an enriched flour comprises the following steps in the order stated:

"*a. separating the germs from the wheat kernels and the manufacture of flour from the rest of the kernel;*

"*b. aging the germless flour;*

"*c. incorporating in the aged germless flour finely divided non-rancid wheat germ constituents; and*

"*d. impregnating the flour with carbon dioxide.*" (Emphasis quoted.)

The appealed claims have all been rejected on Donk et al., Wellinghoff and Dietz in view of Byrne or Currie.

Currie shows a method of preserving grain and other vegetable and animal substances by the application of carbon dioxide while the material is stored in air-tight vessels, or other proper receptacles. He thus prevents, according to his disclosure, the tendency of the grain to vegetate and greatly hinders the decomposition of other vegetable and animal matters.

Byrne discloses a process for treating the flour of wheat and other grain with carbon dioxide while the flour is inclosed in an ordinary flour bolting chest. In his specification, Byrne states—"It is a well known fact to dealers in flour, that the flour of wheat when freshly ground is unfit for the use of bakers, as it makes a much smaller loaf than when it has acquired some age. It is also well known that too much age causes decomposition, the flour generates animalcules and becomes unfit for any use except starch manufacture. As a remedy for these evils, I treat freshly ground flour with carbonic acid gas. It renders fresh flour fit for immediate use and prevents flour at a far advanced age from decomposition."

In the patent to Dietz it is pointed out that "the introduction of the wheat germ, as such, into flour tends, by reason of the relatively large quantity of germ oil, to make the flour rancid and to affect its color and texture." Dietz describes a process for making flour by extracting the germ from the wheat, milling the residue into flour, extracting and activating the oil from the germ "to a high potency in vitamin D and the activated oil is then mixed with the residue of the germ in any desired proportion." The resultant mixture is then introduced in small quantities into flour prepared in any usual manner.

Donk et al. relates to processes in treating wheat germ so as to make it useful in the manufacture of bakery and other food products. The patentee separately grinds and treats the fresh wheat germ as released in the flour mill in the process of milling. It is then packaged in appropriate containers in an inert gas such as carbon dioxide. Subsequently the treated wheat germ is incorporated into bakers' mixture. To cure the deficiency in refined wheat flour as ordinarily used for bread, one of the principal objects of Donk et al. is "to make available for introduction into the ordinary bakers' mixture for bread an even larger proportion of wheat germ than is ordinarily in the wheat grain or berry."

Wellinghoff removes the oil from the wheat germ and the non-rancid residue is reintroduced into the flour stream for further milling with the flour.

Dietz, Wellinghoff and Donk et al. do not specifically describe the step of aging the flour, but it is referred to in Byrne and each of the foregoing references contemplate that the flour would be aged prior to its use by the baker. The aging of flour is not only old in the art but it is also conventional as hereinbefore noted. In Dietz, Wellinghoff and Donk et al. the wheat germ is separately ground and treated to remove the rancid element in the germ and the non-rancid germ is thereafter incorporated in aged flour for the bakers' mixture. Donk et al. also shows that rancidity may be eliminated by storing the germ contents in carbon dioxide, and Byrne discloses that it is old to impregnate flour with carbon dioxide for the purpose not only of rendering freshly ground flour fit for immediate use by the baker but also of preserving the flour by the prevention of its decomposition.

The cited references considered collectively clearly suggest doing the thing that appellant has done in this case and the Primary Examiner and the Board of Appeals correctly decided that the methods and article defined in the appealed claims were not patentable over the art of record for the reason that what appellant has done would be obvious to anyone skilled in the art. See In re Stover, 146 F.2d 299, 32 C.C.P.A., Patents, 823.

Appellant contends that the references taken singly or together do not teach his characteristic four steps which are new in the art and which are necessary to obtain the desired result. There is no merit in the point here in the absence of any proof in the record that the order of performing the steps produces any new and unexpected results. See In re Gibson, 39 F.2d 975, 17 C.C.P.A., Patents, 1090; In re Lang et al., 97 F.2d 626, 25 C.C.P.A., Patents, 1322; In re McKee, 83 F.2d 819, 23 C.C.P.A., Patents, 1187.

In view of our conclusion it is unnecessary to discuss and pass upon the question of aggregation and the decision of the Board of Appeals, is accordingly affirmed.

Affirmed.