33 C.C.P.A.(Patents)

## In re HERTHEL.

### Patent Appeals No. 5197.

Court of Customs and Patent Appeals.

June 11, 1946.

Pennie, Davis, Marvin & Edmonds, of New York City (Louis D. Forward, of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting claims 1, 2, 3, and 4 in appellant's application for a patent directed to a method for "certain new and useful improvements in lubricating oils" particularly adapted for producing light viscous oils from heavy viscous oils.

There were no claims allowed and appellant petitioned the board requesting a reconsideration of its decision. The petition was granted and the grounds of rejection were reconsidered, but the board declined to make any change in its original decision.

Claims 1 and 4 are illustrative

"1. In the production of light viscous oils from heavy viscous oils, the improvement which comprises subjecting a liquid charge of the heavy stock to mild cracking for a prolonged period in a digestion and distillation vessel, vaporizing the light stock

from said charge as fast as formed and withdrawing the vapors from said vessel, and supplying the heat for decomposition and vaporization by indirect heat transfer from a heating medium circulated through said charge in sail vessel at a temperature of the same order as that of the charge.

"4. In the production of light viscous oils from heavy viscous oils, the improvement which comprises subjecting a liquid charge of the heavy stock to mild cracking for a prolonged period in a digestion and distillation vessel, while restricting thermal circulation in said vessel and avoiding liquid depths within said charge great enough to have any substantial pressure effect upon parts of the charge furthest below the liquid surface, vaporizing the light stock from said charge as fast as formed and withdrawing the vapors from said vessel, and supplying the heat for decomposition and vaporization by indirect heat transfer from a heating medium circulated through said charge in said vessel at a temperature of the same order as that of the charge."

The examiner cited the following references: Penniman, 1,459,515, June 19, 1923; Brown, 1,528,968, Mar. 10, 1925; Werner, 1,669,182, May 8, 1928; Pew, Jr. et al., 1,825,976, Oct. 6, 1931; Pew, Jr. et al., 1,935,953, Nov. 21, 1933; Nelson et al., 1,990,664, Feb. 12, 1935; Wagner et al., 2,155,745, Apr. 25, 1939.

The alleged invention was described as follows by the examiner with numerical references to the drawings which illustrate apparatus for carrying out the combined operation of appellant's process:

"This process involves mild cracking of heavy viscous oils to make light viscous oil of the nature of neutral (lubricating) oil.

"A heavy viscous oil (noting Fig. 1) is heated in digestion zone 4 by indirect heat exchange with a heating medium such as gas oil or diphenyl which is circulated in a closed cycle from heater 7 to coils 5 located in the digestion zone and back to the heater. The heating medium is heated to about 725-750°F. if the heavy viscous oil is heated to the desired temperature of 700-725°F. The vapors are removed from 4 [digestion and distillation vessel] as fast as formed and fractionated in 15 [fractionating tower] into various fractions. The pressure in 4 is preferably maintained at subatmospheric either by a vacuum pump or by the use of steam introduced at 14. The oil may be heated in 4 at the cracking temperature of 700-725°F. for as long as 4 or 5 hours but generally 10-20 minutes is preferred."

As pointed out by the examiner, the applicant discloses three different methods of heating the oil. In one, the coils of the heating medium merely extend through the pool of oil. In another, baffles are arranged through at spaced points to restrict thermal circulation, and in the third, shallow heated pools are provided by having pans or plates over which the oil passes from pan to pan, each being heated by coils. "The reason for the shallow pools," the examiner states, "is apparently to prevent a pressure head due to a deep pool of oil."

Claims 1, 2, and 3 were rejected by the examiner on the ground that they were "unpatentable over Nelson or Wagner in view of Brown, Penniman, Pew (1,935,953) or Werner." Claim 4, which alone contains the further limitation of using small liquid depths in a digestion and distillation vessel, was rejected by the examiner as "unpatentable over Nelson or Wagner in view of Brown, Pew (1,935,953) or Werner for reasons applied to claims 1-3." In his final rejection, the examiner stated: "In summary, it is pointed out that Nelson and Wagner disclose cracking a heavy viscous oil to form a lighter viscous oil for lubricants. That no critical differences exist between applicant's process and their processes such as temperatures, pressure and time except the method of heating the oil. And the method of heating is very old and very well known. No unexpected or unpredictable result has been achieved by merely replacing the method of Nelson or Wagner heating by that shown by the supporting art. It is therefore submitted that the final rejection is proper and should be sustained."

The Board of Appeals in its decision substantially agreed with the reasoning and conclusions of the examiner. It held, however, that the patent to Brown was not pertinent, and the patent to Werner, while

pertinent, was cumulative. It further held that the patent to Pew et al., No. 1,825,-976, was cumulative with Penniman.

Appellant does not deny that Nelson et al. and Wagner et al., the principal references, disclose a process of cracking a heavy viscous oil to obtain a lighter viscous oil for lubricants, or that indirect heating had been used in the prior art in processes which involved the cracking of oil. Appellant contends, however, that none of the secondary references, in its entirety, discloses the heating method, or the equivalent thereof, described in appellant's specification and called for in the combination defined by the claims on appeal.

■ The fact that no single reference in its entirety discloses the heating method claimed by appellant is not a decisive factor in this case. Under the rule established by this court, it is entirely proper to consider a number of references to the prior art in connection with the allowance of patent claims. In such cases the question always is whether the prior art, including the subsidiary references, suggests doing the thing that the applicant has done. In re Stover, 146 F.2d 299, 32 C.C.P.A., Patents, 823; In re Application of Merkle, 150 F.2d 445, 32 C.C.P.A., Patents, 1151.

It may be true that the secondary references are not identical in detail with the disclosure of appellant but in our opinion they suggest doing the thing that appellant has done. Penniman claims an apparatus, but the specification shows a method of heating and cracking oil that is suggestively similar to the operation of the arrangement defined by appellant. Penniman provides means for the thermal circulation of oil, the use of baffles, and the cracking of oil by heat exchange with a heating medium circulated through the charge of oil in a vessel.

If the steam in Penniman is not maintained at a regulated temperature and is not of the same "order" as the temperature of the charge, as argued by appellant, that feature of the process is disclosed in both the cited patents to Pew et al. On this point the Solicitor for the Patent Office correctly states in his brief—

"The Pew et al. patent 1,925,953 also discloses supplying heat for the vaporization of an oil by indirect heat transfer from a heating medium (mercury) circulated through the charge at a temperature of the same order as that of the charge * * *. The patentees state that it is possible 'in our process to effect such vaporization without raising the temperature of the mercury vapor much above the temperature of vaporization of the oil, owing to the very small required temperature difference between the heating and the heated media that is possible where mercury vapor is the heating medium.' "

Claim 4, which refers to the depth of the charge, is a feature also disclosed by Pew et al. and, as stated by the board, the claim is unpatentable for the reasons applied to claims 1 to 3.

Appellant also contends that by comparison his process results in a significantly higher yield than the yield obtainable by the processes disclosed in Nelson et al. and Wagner et al., *"and that this circumstance is made evident by the specific operation described in detail in appellant's specification."* Based on his reasons of appeal, appellant argues that an important factual error was committed by the board "in holding that there is nothing in applicant's specification indicating that applicant obtains higher yields than Nelson et al. or Wagner et al."

In its decision on appellant's petition for reconsideration, the board stated that "Wagner's output was 60-90%" of low viscosity oil. However, appellant explains in his brief that this yield of 90% prior to reduction corresponds to a yield of only 72% in the terms of the final product after reduction, and that this value of 72% should be compared with the 83.6% produced by appellant's process.

■ It was incumbent upon appellant to establish his position by a proper showing of unexpected superiority over the product of the art of record. In re Swenson et al., 30 C.C.P.A. (Patents) 809, 132 F.2d 1020. It is our opinion that the facts presented here do not constitute such a clear showing of superiority as to justify this court in overruling the concurring

decisions of the tribunals of the Patent Office on the point in question.

Moreover, as correctly stated in the decision of the board, "The comparison of the lubricating oil yields by applicant's process and those of Wagner et al or Nelson et al is immaterial to the appeal as applicant's starting material is not the exact topped crudes of Wagner et al or Nelson et al. * * *"

It is our opinion that what appellant has done would be obvious to any person skilled in the art after he had examined the collective references hereinbefore noted, and for that reason appellant is not entitled to the allowance of the rejected claims even though he may have obtained better results. In re Stover, supra.

In view of our conclusion we deem it unnecessary to discuss and pass upon other points raised here by appellant, and the decision of the Board of Appeals is accordingly affirmed.

Affirmed.

GARRETT, Presiding Judge, sat during the arguments of this case, but because of illness took no part in its consideration or in the decision.