O’CONNELL, Judge,
delivered the opinion of the court:
This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claim 2 of appellants’ application for a patent for a vitamin enriched foodstuff, particularly wheat flour, which is stable under usual storage conditions.
Claim l'was cancelled and no claim was allowed. Claim 2, which is the only claim in the case, reads as follows:
*988 . 2. An enriched foodstuff, stable under usual storage conditions, that comprises an essentially homogeneous mixture of a major proportion of wheat flour with a minor proportion of a substance represented by the formula:

The references relied upon are:
Dietz, 1,974,808, September 25, 1934.
Wellinghoff, 2,230,417, February 4, 1941.
Williams et al., 2,328,594, September 7,1943.
Williams et ah, 2,328,595, September 7,1943.
“The Story of Vitamin Bi,” by C. R. Addinall, Merk & Co., Inc., Rahway, N. J., 1940, page 16.
Appellants in their specification assert that the enriclnnent of foodstuffs, such as flour, with vitamins provides a convenient method for correction of dietary deficiencies; that of the water soluble group of vitamins, the most widely known is vitamin Bi, which substance, in the form of its hydrochloride, is generally used as an enriching agent; and that when thus used, the physiological activity of vitamin Bt hydrochloride is diminished largely, if not wholly destroyed, during usual storage conditions thereby necessitating the use of an excess of additive.
An object of the claimed composition, which is a new homogeneous mixture of a major portion of wheat flour and a minor portion of thiamin mononitrate, is to provide certain mono-salts of thiamin that can be used in the enrichment of foodstuffs, such as flour and the like, and that, when mixed with the foodstuff and stored under ordinary conditions in warehouses and on grocers’ shelves, retain substantially full physiological activity.
Appellants’ specification discloses that the monosalt employed by them could be either a nitrate, iodide, bromide, or thiocyanate. However, the nitrate salt alone is being claimed. Patentability is predicated upon appellants’ discovery as to the extraordinary stability of that salt under ordinary storage conditions, as described by the tests of record. The primary issue therefore is whether in the enrichment of flour, the substitution of the thiamin salt, thiamin mononitrate, for the previously utilized thiamin chloride hydrochloride did or did not amount to invention.
There is no dispute between appellants and the Solicitor for the Patent Office as to the increased stability under usual storage conditions of thiamin mononitrate in flour as compared with the usually *989 employed enrichment agent, the chloride hydrochloride salt. Nor is there any disagreement between them as to what is disclosed by the prior art of record.
Each of the respective patents to Dietz and Wellinghoff discloses that wheat flour has been previously enriched by the addition thereto of the natural vitamin Bi. Wellinghoff states that the keeping qualities of the flour are increased many times and the dietetic properties thereof greatly improved by the inclusion and presence of the vitamin in the flour. No mention in the disclosure of either patent is made of adding to the flour the particular salt of thiamin, thiamin mononi-trate, utilized by appellants. It is noted, however, that in their brief appellants state:
s= ⅜ ⅜ This specific vitamin salt as a new chemical compound, as distinguished from the new composition resulting when it is incorporated in wheat flour, must be conceded to be old insofar as the present appellants are concerned. * * * [Italics quoted]
The patents to Williams et al. relate to processes for the production of antineuritic compounds, the synthesis of pyrimidine compounds, the synthesis of vitamin Bl5 salts thereof, and related products having the essential physiological properties of vitamin B^ The variety of compounds disclosed are vitamin salts. According to the examiner, the disclosure includes a thiamin mono-salt defined by claim 10 of patent No. 2,328,595. The patentees state not only that the syntheses covered by their patents make available vital substances which may be incorporated in foods deficient in natural vitamin Bx but also- that the acid radical of the syntheses may be varied almost at will. In speaking of the use of the acid salts of the vitamin to produce compounds having antineuritic properties, nitrate esters are mentioned by the patentees along with those of the chloride, sulphate, and phosphate.
“The Story of Vitamin Bi” was cited by the examiner because it “teaches the reversible oxidation and reduction as part of the fundamental physiological reaction within the cells [of a living body] in the utilization of vitamin B1? thus further showing the equivalence of the mono-salt and the natural vitamin.”
Claim 2 was rejected by the examiner as lacking invention over the disclosure of Dietz and of Wellinghoff, in view of the teaching of each of the patents to Williams et al. and “The Story of Vitamin Bi.” That rejection was affirmed by the board, which deemed it unnecessary to discuss the cited prior art in detail since no contention was made by appellants there that the examiner had erred as to the disclosure of such art.
*990 : The board likewise found it unnecessary to discuss the many objections offered by the examiner as to the sufficiency of the various affidavits filed by appellants tending to establish the unpredictable and surprising improved stability of the claimed thiamin mononitrate when admixed with flour. Instead, the board held that the affidavits in question were effective to establish utility for appellants’ composition. In so holding, the board pointed out, however, that the utility claimed, that is, the claimed stability, does not indicate inventiveness on the part of appellants because their composition is obvious from the teaching of the prior art.
 There is no question that the substitution of one substance for another in a combination of elements, all usually old, may sometimes constitute invention. Gelardin v. Revlon Products Corporation et al., 76 USPQ 154. However, the mere substitution of equivalents which in a combination do substantially the same thing in the same way does not amount to invention, even though better results may be produced thereby. In re Stover, 32 C. C. P. A. (Patents) 823, 146 F. (2d) 299, 64 USPQ 186.
.. It may be true, as appellants contend, that they were the first to prepare the product defined by the claim on appeal. We are compelled to agree, however, with the contention of the Solicitor for the Patent Office that in view of the art of record, no invention was involved in substituting, as appellants have done, the synthetic vitamin Bi or the •salts thereof as taught by Williams et al. for the natural vitamin Bt .in the combination with wheat flour as taught by Dietz or Wellinghoff, •particularly since the search for synthetics and their use as substitutes for naturally occurring physiological agents is so general that such practice has become accepted as a matter of course in the enrichment of foodstuff.
In view of that conclusion, it would serve no useful purpose to discuss other points which have been argued by counsel for appellants and the Solicitor for the Patent Office with respect to the decision of the Board of Appeals. Its decision is accordingly affirmed.