35 C.C.P.A.(Patents)

### Application of WALLDOV.

### Patent Appeal No. 5386.

Court of Customs and Patent Appeals.
Feb. 10, 1948.

Harry B. Rook, of Newark, N. J., for appellant.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming that of the Primary Examiner, rejecting claims 1, 8, and 11 of an application, serial No. 529,491, filed April 4, 1944, for a patent for "Poultry Food." as unpatentable over the prior art and as non-inventive. Six claims were allowed.

The rejected claims read as follows:

"1. A food for poultry comprising a substantial quantity of gelatine mixed with a suitable mash."

"8. A food for poultry including gelatine in quantity which will prevent barbarism."

"11. A food for poultry comprising a substantial quantity of gelatine mixed with a suitable mash and a food dye of an attractive color."

The references relied upon are:
Bohrmann, 1,057,215, March 25, 1913.
British patent, 11,711, of 1914.
British patent, 15,800, of 1914.
"The Health Value of Knox Sparkling Gelatine" (1929), pages 2 and 3.

The invention relates to poultry food and discloses an improved poultry food in which gelatine, which may be in powdered form, is mixed with a mash. The preferred form of gelatine is in the shape of noodles made of digested.gelatine and shaped like macaroni or spaghetti, which when broken into small pieces and soaked in cold water are then mixed with a dry mash. It is said

that the wormlike appearance of the gelatine strongly attracts poultry.

The Bohrmann reference relates to a process of manufacturing poultry food and discloses a food in granular form made from "mash feed." Those feeds generally consist of bran, middlings, shorts, cracked corn, ground bone, oil cake meal, dried meat scraps, and the like. In the process of the patent the "mash feed," as above described, is made into small hard shapes about the size, dryness, and hardness of grains of wheat. It is said that the product, including other different ingredients, may be used as feed for cattle and other livestock.

British patent No. 11,711 relates to food for cattle and other animals. It discloses food containing in suitable proportions gelatine, malt extract, cod-liver oil, etc., and flavoring material. The product is made into cubes and preferably wrapped in grease-proof paper.

British patent No. 15,800 relates to bird food and describes portions of roots, such as carrots or parsnips; or fruits, such as apples, bananas, dates, etc., pressed into cubes or other shapes which, when dried, are coated with gelatine and then dipped into birdseed which adheres to the gelatine covering. It is stated that that form of food it attractive to cage birds, and that it will benefit their health.

The publication, "The Health Value of Knox Sparkling Gelatine," discloses the food and health value of gelatin, particularly for infants.

■ The examiner rejected the involved claims as lacking invention over the British patents in view of the Bohrmann and the publication references. He stated that the publication amply showed that gelatine is nutritious and that to mix gelatine into the Bohrmann mash for the purpose of making a desirable balanced poultry food would be aggregative and devoid of inven-

tion. The examiner held that both of the British patents disclose the use of gelatine as an ingredient of the foods therein described, and that the inclusion of dye, as shown in claim 11, cannot impart patentability to that claim for the reason that the dye obviously was used merely for its color effect to attract the poultry.

The Board of Appeals concurred in the reasoning of the examiner, and stated that since protein, as contained in blood and meat, has been admittedly used in poultry feed, that the use of gelatine as a pure protein would be obvious, and that the amount thereof used would be merely a matter of choice.

We are in accord with the decisions of the Patent Office. Clearly, as shown in the Knox publication, gelatine has a high nutritive value; gelatine, as disclosed in the British patents as a food ingredient for animals and for birds, is old.

■ As to the limitation on claim 8 that the amount of gelatine is to be such as to prevent barbarism, we must hold that such expression is indefinite and that patentability of the claim by reason of such limitation cannot be upheld. See In re Ayers, 154 F. 2d 182, 33 C.C.P.A., Patents, 874; Murphy & Chadeloid Chemical Co. v. Coe, 69 App. D.C. 225, 99 F.2d 994; Koebel v. Coe, 70 App.D.C. 261, 105 F.2d 784; In re Schwendler et al., 115 F.2d 261. 28 C.C.P.A., Patents, 710.

■ We are in full agreement with the reasons advanced by the tribunals of the Patent Office in rejecting the claims as unpatentable over the prior art, and because of our agreement the decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.